**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 SW Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
 Of Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **CASEY SNIDER; SCOTT FRAZIER; DARREL CARLSON**; **HECTOR CARRASCO MONTIEL; ROCKY ROBISON; BOBBY SWEARINGEN; JERRY ANDERSON; and ESTEBAN VALLEJO;** on behalf of themselves and all other similarly situated persons, known and unknown,<br><br>             Plaintiffs,<br><br>       v.<br><br>**OREGON DEPARTMENT OF CORRECTIONS,** an agency of the State of Oregon; **COLETTE PETERS, TROY BOWSER, SUE WASHBURN; MARK NOOTH; LIEUTENANT CHAMBERS; THERESA SWART; STEVEN BOSTON; OFFICER CHRISTIAN; OFFICER DIAZ; OFFICER MCDONOUGH;** | Case No. 2:20-cv-510<br><br>**CLASS ACTION COMPLAINT** |

PAGE 1 – **CLASS ACTION COMPLAINT**

**OFFICER EDDY; SARGENT ROBERTS; LIEUTENANT ARCHER; LIEUTENANT LINDHOLM; JASON DUCHEK; LIEUTENANT POWELL; SARGENT ARGUELLO; and SARGENT PITTNER;**

Defendants.

Plaintiffs, on behalf of themselves and all other similarly situated persons, known and unknown, bring this class action against defendants. Plaintiffs and the putative class members allege as follows:

## NATURE OF ACTION

1. This is a class action for injunctive relief caused by Defendant's deliberate indifference to the rights of Plaintiffs and other similarly situated individuals in violation of the Eighth Amendment to the U.S. Constitution. Plaintiffs also individually bring claims for negligence against Defendant Oregon Department of Corrections (ODOC).

2. This is a class action lawsuit based on Defendants' willful and deliberate refusal protect Plaintiffs and putative class members from known dangers of assault from other inmates. Defendant ODOC, through its policies and practices as crafted, implemented and enforced by defendants, has failed to protect inmates that are likely to be assaulted because of their status as a gang drop out or they are otherwise vulnerable within prison populations. Furthermore, defendants routinely require inmates that are afraid for their safety to refuse to enter their cells and receive discipline in order to be placed in protective custody. Plaintiffs seek an injunction requiring that defendants undertake steps to ensure that inmates are safely housed and not assaulted because of their vulnerable status.

3. Plaintiffs individually also seek damages arising from mental, emotional, and physical injuries caused by defendants' deliberate indifference and negligence.

PAGE 2 – CLASS ACTION COMPLAINT

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

## PARTIES

4. Casey Snider is an inmate at the Two Rivers Corrections Institution (TRCI).

5. Scott Frazier is an inmate at the TRCI.

6. Darrel Carlson is an inmate at the TRCI.

7. Hector Carrasco Montiel is an inmate at the TRCI.

8. Rocky Robison is an inmate at the Eastern Oregon Correctional Institute (EOCI).

9. Bobby Swearingen is an inmate at the EOCI.

10. Jerry Anderson was an inmate at Oregon State Penitentiary (OSP), EOCI and TRCI.

11. Esteban Vallejo is an inmate at TRCI.

12. ODOC is an agency of the State of Oregon and operates all prisons in Oregon including TRCI, EOCI and OSP.

13. Colette Peters is the Director of the ODOC. Peters is responsible for the crafting and implementation of the policy of refusing to acknowledge active and inactive gang units at TRCI and EOCI. Peters is responsible for implementing the cell match system which places inmates in units/cells based on criteria to that do not take into consideration credible threats of violence toward inmates.

14. Troy Bowser is the superintendent of TRCI. Bowser is responsible for the crafting and implementation of the policy of refusing to acknowledge active and inactive gang units at TRCI. Bowser is responsible for implementing the cell match system at TRCI which places inmates in units/cells based on criteria to that do not take into consideration credible threats of violence toward inmates.

15. Sue Washburn is the superintendent of EOCI. Bowser is responsible for the

PAGE 3 – **CLASS ACTION COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

crafting and implementation of the policy of refusing to acknowledge active and inactive gang units at EOCI. Washburn is responsible for implementing the cell match system at EOCI which places inmates in units/cells based on criteria to that do not take into consideration credible threats of violence toward inmates.

16. Mike Gower is the Operations Director of the ODOC. Gower is responsible for the crafting and implementation of the policy of refusing to acknowledge active and inactive gang units at TRCI and EOCI. Gower is responsible for implementing the cell match system which places inmates in units/cells based on criteria to that do not take into consideration credible threats of violence toward inmates.

17. Mark Nooth is the Eastside Assistant Operations Director of the ODOC. Nooth is responsible for the crafting and implementation of the policy of refusing to acknowledge active and inactive gang units at TRCI and EOCI. Nooth is responsible for implementing the cell match system which places inmates in units/cells based on criteria to that do not take into consideration credible threats of violence toward inmates.

18. Lieutenant Chambers is a Security Threat Management (STM) lieutenant at TRCI. She is responsible for assessing the security threats in inmate housing and determines where inmates may be housed.

19. Officer Theresa Swart is a housing officer at TRCI. She is responsible for assessing the security threats in inmate housing and inmate housing.

20. Sargent Chapman is a Sargent at TRCI.

21. Officer McDonough is a housing officer at TRCI.

22. Officer Eddy is a housing officer at TRCI.

23. Captain Steven Boston is a captain at TRCI.

PAGE 4 – CLASS ACTION COMPLAINT

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

24. Sargent Roberts is a sargent at TRCI.

25. Lieutenant Archer is a lieutenant at TRCI.

26. Officer P. Mays is a housing officer at TRCI.

27. Officer Christian is a housing officer at TRCI.

28. Officer Diaz is a corrections officer at TRCI.

29. Lieutenant Lindholm is a lieutenant at EOCI.

30. Jason Duchek is a lieutenant at EOCI.

31. Lieutenant Powell is a lieutenant at EOCI.

32. Sargent Arguello is a sargent at EOCI.

33. Sargent Pittner is a sargent at EOCI.

34. The individual defendants identified in paragraphs violated Plaintiffs' federal constitutional rights by failing to protected him against known and serious threats to his safety. Defendants acted under the color of law and were deliberately indifferent to Plaintiffs' constitutional rights. Plaintiffs seeks equitable relief, compensatory and punitive damages, as well as attorney fees and costs as set forth below.

35. These Defendants are directly and personally responsible and liable for violations of Plaintiffs' civil rights as set forth below. At all times herein, Defendants were acting under color of state law when committing the illegal acts; Defendants acted in bad faith and violated clearly established laws which reasonable prison officials knew or should have known. Each Defendant is sued in their individual and official capacity.

36. Each individual acted under color of law and in their personal and professional capacities when they ignored Plaintiffs' requests for protection and deliberately placed them in harm's way.

PAGE 5 – **CLASS ACTION COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

37. Plaintiffs employed the prisoner grievance procedure available and exhausted the grievance procedures in full.

38. Plaintiffs filed Tort Claims Notices within the time allotted by statute.

## GENERAL FACTUAL ALLEGATIONS

39. In Oregon prisons, gang members still participating in gang activities are referred to as "active"; those who have left the gang are called "dropouts." These terms are known and used by staff and inmates alike. Dropouts are subject to violence at the hands of active gang members. This is true of the Sureño and European Kindred (EK) gangs. Sureño members are primarily Latino and EK is a white supremacist gang.

40. Previous policies at TRCI and EOCI had created dropout and active gang units so there were units that gang dropouts and other vulnerable inmates would be safe from predation by gang members. As of 2019, ODOC discontinued that policy. Under the new system there were only general population housing units and incentive housing units. This has resulted in active gang members and dropouts being housed in the same units. As a consequence, gang dropouts are being routinely assaulted, bullied, exorted and harassed by active gang members in ODOC facilities.

*Casey Snider*

41. In April 2019, Snider was transferred from DSU to Unit 9 at TRCI. Before being released from DSU in April 2019, Snider informed DSU staff that he would not be safe if he were to be transferred to Unit 9 because of his documented history of conflict with members of White Supremacist gangs, including EK. Snider informed officers of this conflict and indicated that a "green light" had been placed on him by EK. A "green light" means that the inmate should be assaulted or killed by members of that gang or any affiliate gang.

PAGE 6 – **CLASS ACTION COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

42.     Nevertheless, Snider transferred to Unit 9. Upon arrival at Unit 9, Snider informed staff (McDonough and Eddy) of the same information that Snider had presented to DSU staff. Eddy asked if he would be alright since Eddy was aware of Snider's housing history and need for nonactive gang units. Unit Staff told him that he was going to be transferred to cell 3 and that they would "keep an eye on him." Swart was the assignment officer and was responsible for Snider's housing.

43.     On May 23, 2019, Snider was assaulted without warning by a member of a white supremacist gang member on his unit, Tyler Ljubich. Ljubich was a member of a group called the Wolf Pack Skinheads. WPS are affiliated with EK and other white supremacist gangs in TRCI. Assailant came up behind Snider and began punching him in the head and jaw and then started kicking Snider while he was on the ground. The assault split Snider's head open and caused a concussion, bruising, swelling and severe pain. Snider was transported the Emergency Room at Good Shephard Hospital. Snider was unconscious from the assault for approximately 30 minutes. Snider underwent a CT scan and received seven staples and three sutures in his head.

44.     The following day Officer Hancock sent Snider back to Unit 9 with a wet head wound. Snider explained what had happened. Hancock stated that Snider was being sent to Unit 9 per the Officer in Charge (OIC).

45.     Snider was at Unit 9 for 3-4 days. During the time he spent back in Unit 9, Snider was afraid for his safety and suffered extreme emotional distress.

46.     On May 29, 2019, Chambers said that she was fully aware of what happened and that Snider "was not supposed to be there [meaning Unit 9]." She ordered Snider was moved to Unit 1.

PAGE 7 – **CLASS ACTION COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

*Hector Carrasco Montiel*

47. Before his incarceration, Carrasco Montiel dropped out of the Sureño gang.

48. In December 2015, while incarcerated at TRCI Carrasco Montiel was assaulted by two active Sureño members, causing serious injuries to Carrasco Montiel's face and nose. During this time, he was housed in an active unit at TRCI.

49. In August 8, 2017, Carrasco Montiel was again assaulted by active Sureños at TRCI. At this time Carrasco Montiel was in a protective custody unit but encountered the inmates that assaulted him while in line for canteen.

50. In October 2019, Carrasco Montiel was moved to Unit 6 which is known as an active Sureño gang unit. Carrasco Montiel sent kytes to Assignment Officer stating that he had been previously assaulted by Sureño gang members and that he would not be safe on Unit 6. Swart and Chapman responded to these communications by stating that he would "housed appropriately" using the "cell match" system.

51. On January 13, 2020, Carrasco Montiel was again assaulted by Sureño gang members. Carrasco Montiel was walking toward a table when an inmate came up to him and asked if he was a Sureño dropout. He said yes, and then the inmate immediately and without warning began punching Carrasco Montiel. Carrasco Montiel tried to defend himself from the assault.

*Scott Frazier*

52. Frazier was housed in Unit 1 at TRCI in October 2019. Unit 1 had been an inactive unit with gang drop out inmates. By the time Frazier was moved to Unit 1 in 2019, TRCI began moving inmates from DSU to Unit 1 including active gang members. Frazier's cell was a gang drop out.

PAGE 8 – CLASS ACTION COMPLAINT

Law Offices of Daniel Snyder
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

53. On October 24, 2019, an active gang member came to the door of Frazier's cell and began threatening Frazier's cellmate. Christian opened the cell from the control point and the gang member entered the cell and severely assaulted Frazier. The inmate came in and without warning started punching Frazier in the face and head. Frazier was knocked unconscious and was repeated stomped on by the inmate.

54. Frazier suffered facial fractures, concussion, loss of consciousness, hematoma on the back of his head from where he was stomped. Frazier's right eye was damaged and he has suffered loss of vision and pain.

55. Chambers was responsible for determining which unit Frazier was sent to.

*Darrell Carlson*

56. In 2018, Carlson was placed on Unit 2 which was a drop out unit. In November 2018, Carlson was placed in DSU for 25 days. Upon release from DSU, Carlson was housed in Unit 6, a general population unit with active gang members. The cell match system matches inmates with similar convictions. Carlson was housed with sex offender on Unit 6. This caused o other inmates in the unit to believe that Carlson was a sex offender.

57. An inmate on unit 2 told Carlson that the rules of the unit were that he could not come out of his cell for any reason other than call out and that if he went to day room or otherwise came out of his cell during free time he would be assaulted.

58. On several occasions, inmates offered to provide protection in exchange for purchasing commissary.

59. Carlson sent communications to Swart, the housing officer, Archer, Roberts, the corridor Sargent, and Boston. He informed the officers that he was afraid for his safety and that he was being extorted. These officers informed him that he had no documented conflicts in his

PAGE 9 – **CLASS ACTION COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

file, he was placed per the cell match system and that he would be "housed appropriately." Boston advised him to get his incentive level so he could be moved.

60. On April 10, 2019, Carlson was out of his cell using the telephone. An inmate came up to him and told him he could not use the telephone and started punching him in the face. Carlson's nose was broken.

61. After this he was taken to DSU, and charged with fighting. He was cleared of the fighting charged and told that he was being moved to Unit 14 another general population unit. Carlson told the staff (Diaz) that he could not go to Unit 14 because he would be assaulted again. Diaz wrote him up for refusing an order and placed him in DSU again. Carlson was again sent back to Unit 6.

62. On July 31, 2019, Carlson was again assaulted by gang members on the unit. During tray return for meals, Carlson was in his cell when an inmate entered his cell and struck him in the face. Carlson suffered severe injuries including his cheek being slashed all the way through so that his teeth were visible through the hole in his cheek. He is permanently disfigured.

*Rocky Robison*

63. In June 2019, Robison was processed through intake at Coffee Creek Correctional Facility (CCCF). Before coming to CCCF, Robison's then-girlfriend contacted an officer at CCCF to inform them that Robison feared for his safety given his status as an EK gang drop out. Upon arrival at CCCF, they documented Robison's gang related tattoos. At CCCF, Robison informed intake staff (Officer Amber Peterson and STM Lieutenant Michael Hill) that he was concerned about his safety and that he could not be placed on an active gang unit with members from his former gang. Peterson and Hill are members of the STM team at CCCF. Peterson and Hill assured Robison that he would be placed at OSCI or the eastside of EOCI.

PAGE 10 – **CLASS ACTION COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

64. Upon arrival at EOCI, Mays told Robison that he would be housed on the westside of EOCI. Robison informed her that he could not be housed on the westside of the prison because it had a white supremacist gang presence that would assault him if they saw him. Mays asked Robison if he could name any individuals that were on the westside, and Robison indicated that he did not know who was in the prison. Robison was placed in a westside housing unit.

65. When he arrived in the unit, Robison went to his cell to make his bed and put away his personal belongings. When he came out to the day room, he was confronted by two gang members from EK. They told them that Robison could not be on the unit and that he either had to assault his cellmate or they would assault him. An officer directed Robison to go to Receiving and Discharge to pick up some personal property. Robison alerted Sargent Longhorn that he had just been threatened. Longhorn told Robison to contact Lindholm. Robison spoke with Lindholm; Lindholm placed Robison on an administrative segregation hold and housed him in DSU.

66. Upon release from DSU, Robison was again told that he was going to be housed on the west side of the prison. Lindholm was responsible for the decision to send Robison back to the west side. Robison reported his concerns that he would be assaulted if housed on the west side.

67. On August 6, 2019, he was released to the west side. Robison spoke with Pittner and told him that he would be assaulted if housed on the west side. Pittner told Robison to kyte the concern to inmate housing office. Robison was taken to the westside unit where he met with Arguello, the west side Sargent; Robison again expressed his concerns. Arguello directed Robison to go to his housing unit on the west side and that he, Arguello would try to talk with

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

the inmate housing office. Robison went to his new unit on the west side. That night, Robison entered the day room where he was confronted by one active EK member who asked if Robison was an EK dropout. The inmate said, "You're no good you're a drop out" and then started hitting Robison in the face and torso. Robison attempted to defend himself by pushing him away; the inmate kept hitting Robison; Robison tried to hold onto the inmate to prevent him from hitting him. Officers eventually came and separated the inmates. Robison suffered head injuries and experienced headaches as a result of the assault. Robison was disciplined for "fighting" and lost privileges as a result. The circumstances of the assault and housing leading up to the assault caused significant emotional distress and anxiety.

*Bobby Swearingen*

68. Swearingen has been an EK drop-out since 2011. When he arrived at CCCF he informed the intake staff that he wanted to drop out of EK. When he arrived at EOCI, the then-STM Lieutenant Peters spoke with Swearingen about his drop out status. Peters agreed to place Swearingen on the East Side because there were other EK drop outs on that side. Swearingen has been housed on the East side of EOCI since 2011.

69. In November 2018, Swearingen was released from segregation and went to Duchek's office. Duchek stated that Swearingen was being sent to the west side of the institution. Swearingen expressed his concern that he was an EK drop out and that the west side was an EK active unit. Swearingen refused to be placed on the west side and was sent back to segregation and fined.

70. On February 26, 2019, Swearingen was again released from segregation and sent to Duchek's office. Ducek stated that Swearingen was going to be sent to the west side and that he would have to just "politic" things out with his old gang.

PAGE 12 – **CLASS ACTION COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

71. In May 2019, Swearingen send a kyte to Lindholm (the housing lieutenant) stating that he needed to get out of the west side for his safety and that he wanted to go to OSCI even if he had to go through IMU (Intensive Management Unit). Swearingen was written up for extortion, sent to seg and again released to the west side.

72. On September 5, 2019, a white supremacist prospect (a person trying to become a member) came into Swearingen's cell and severely assaulted him. The inmate punched him, choked him and kneed him in the face. Swearingen was sent to medical where he was kept overnight for observation.

73. The following day Officer Bateman approached Swearingen and asked him where he could be housed. Swearingen stated reminded him that he was an EK dropout. He asked what unit Swearingen wanted on the east side and Swearingen told him. Swearingen was then moved to the east side.

*Jerry Anderson*

74. Anderson is of mixed black and native American ancestry. He was admitted into custody June 11, 2019. After intake at CCCF he was sent to OSP.

75. On August 6, 2019, Anderson was assaulted in the cafeteria by gang member. Anderson was sent to ad-seg until August 16, 2019. He was not interviewed by STM team. On his way out of ad seg Anderson tells Lieutenant Hong that he is concerned about being assaulted by IPO.

76. On August 16, 2019, Anderson is assaulted by IPO members in the chow hall. Anderson was sitting at the table and an IPO gang member came up and started punching him in the head.

77. Anderson was again sent to seg for 11 days. Anderson was disciplined for

PAGE 13 – **CLASS ACTION COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

defending himself. During that time, he attended a hearing on his discipline. Anderson informed the hearings officer of his concerns about being assaulted by IPO. The hearings officer indicated that he would speak with STM. After the hearing, Anderson was sent to EOCI to do 90 days seg.

78. On approximately October 20, 2019 the seg counselor told Anderson that he is going to be sent back to OSP. Anderson kyted Duchek and told him he cannot go back to OSP or will be assaulted again by IPO. Anderson did not receive a response.

79. On November 14, 2019, Anderson was sent back to OSP. On November 15, 2019, he was assaulted by IPO gang member again in the chow hall. An inmate came up to him and without warning started punching him in the face. Anderson sent a grievance to Lieutenant Sundquist for not issuing a keep separate order. This was denied out of hand. Anderson was again disciplined for defending himself and sent to TRCI to serve 120 days of seg.

*Esteban Vallejo*

80. Vallejo is a documented drop out Sureño that began his incarceration in May 2018.

81. Vallejo has repeated informed STM and other staff at TRCI that he is a Sureño dropout and that he cannot be housed with active Sureño gang members or he will be assaulted.

82. In 2019, TRCI housing and STM staff placed an active Sureño gang member with a history of extreme violence on Vallejo's unit.

83. On July 21, 2019, this active gang member came up behind Vallejo and poured boiling hot water down his back and started punching him. Vallejo was sent to the hospital with contusions and burns.

## CLASS ACTION ALLEGATIONS

84. Plaintiffs seek certification of this lawsuit as a class action in order to adjudicate

PAGE 14 – **CLASS ACTION COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

the rights of Plaintiffs and all other similarly situated persons, known and unknown (hereinafter the "putative class"), who are incarcerated by ODOC. Plaintiffs and the putative class members seek equitable relief as follows:

    a.    A declaration that the acts and omissions described herein violated plaintiffs and the putative class members' rights under the U.S. Constitution;

    b.    A preliminary and permanent injunction ordering defendants to stop housing gang dropouts and other vulnerable persons in the same units or cells with active gang members;

    c.    A preliminary and permanent injunction ordering defendants to stop housing inmates in units or cells where they have a credible threat of harm from other inmates in that unit or cell; and

    d.    A preliminary and permanent injunction ordering defendants to stop disciplining inmates that refuse to be housed in units out of a credible fear for their safety;

85. This action is brought as a class action under Fed. R. Civ. P. 23 because the putative class is so numerous that joinder of all class members is impracticable.

86. Plaintiffs and members of the putative class have been equally affected by defendants' practice of housing gang dropouts and other vulnerable persons with active gang members that have announced their intention to cause them harm. While the precise number of putative class members has not been determined at this time, ODOC incarcerates 14,923 people, with 1,765 and 1,846 inmates at EOCI and TRCI respectively (the prisons in which plaintiffs are incarcerated). It is believed that the putative class of inmates subjected to Eighth Amendment violations herein numbers in the hundreds of inmates.

PAGE 15 – **CLASS ACTION COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

87. The putative class members incarcerated by Defendant may be reluctant to raise individual claims for fear of retaliation.

88. The issues involved in this lawsuit present common questions of law and fact, which predominate over any variations that may exist between members of the class. Defendant applies a policy of housing dropouts and other vulnerable persons with active gang members.

89. Plaintiffs' claims are typical of the claims of the putative class. They were the result of the application of a common policy or practice that is the subject of this lawsuit.

90. Plaintiffs, the putative class and Defendant have a commonality of interest in the subject matter and remedy sought.

91. Plaintiffs are able to fairly and adequately represent and protect the interests of the putative class.

92. Plaintiffs' counsel are competent and experienced in litigating class action lawsuits, such as the instant one.

93. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to the putative class, to the Court and to Defendant. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

///

///

PAGE 16 – **CLASS ACTION COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

# CLAIM I

## (42 U.S.C. § 1983 – Violation of Constitutional Rights)

(against Defendants Peters, Bowser, Washburn, Nooth, Chambers, Swart, Boston, Christian, Diaz, McDonough, Eddy, Roberts, Archer, Lindholm, Duchek, Powell, Arguello, and Pittner)

94. Plaintiffs and members of the putative class reallege all prior paragraphs as if fully stated herein.

95. By failing to protect plaintiffs and members of the putative class and exposing them to violence at the hands of members of prison gangs, as alleged above, Defendants violated Plaintiffs' and the putative class members' Eighth Amendment Rights under the U.S. Constitution.

96. All of these claims mentioned caused plaintiffs mental, emotional and physical injuries.

97. Plaintiffs and putative class members have no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiffs and putative class members have been and will continue to be irreparably injured by the conduct of the defendants unless the Court grants the declaratory and injunctive relief which he seeks.

98. Defendants' acts were willful and malicious and done with reckless indifference to Plaintiffs and putative class members' protected rights. Defendants should be assessed punitive damages in an amount as fixed by a jury to punish them and to deter such conduct in the future.

99. Plaintiffs and putative class members are entitled to attorney fees, costs and disbursements pursuant to 42 U.S.C. § 1988.

PAGE 17 – **CLASS ACTION COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

## CLAIM II

### (Negligence)

### (against Defendant ODOC)

100.    Plaintiffs re-allege all prior paragraphs as if fully stated herein.

101.    ODOC was negligent in exposing plaintiffs to known dangers as alleged above.

102.    ODOC knew or should have known that housing plaintiffs in units with members of a gang that intended them harm would result in their suffering physical harm and severe physical and mental pain and suffering.

103.    ODOC failed to use reasonable care in incarcerating plaintiffs as alleged above. ODOC's conduct was negligent.

104.    ODOC owes plaintiffs a higher standard of care because of the nature of incarceration. As a ward of the State, ODOC manages all aspects of plaintiffs' care. Had plaintiffs been free persons, they would have been able to avoid these gang members. However, as an incarcerated person, plaintiffs' pleas for protection were ignored. ODOC voluntarily took the custody of plaintiffs under circumstances such as to deprive them of normal opportunities for protection, and created a non-delegable duty to ensure that they were safe. ODOC did not meet its obligation to protect plaintiffs.

105.    ODOC's conduct was unreasonable in light of the risk of harm to plaintiffs.

106.    As a consequence of ODOC's negligence, plaintiffs suffered physical harm and severe physical and mental pain and suffering.

107.    Plaintiffs provided the State of Oregon with timely Tort Claims Notices.

108.    ODOC's conduct was a substantial factor in causing harm to plaintiffs.

109.    As a result of ODOC's conduct, plaintiffs suffered non-economic damages in an

PAGE 18 – **CLASS ACTION COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

amount to be proved at trial.

    110.    Plaintiffs are entitled to a prevailing party fee, his costs and his disbursements.

## PRAYER

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment granting Plaintiff:

    a)    A declaration that the acts and omissions described herein violated plaintiffs and the putative class members' rights under the U.S. Constitution;

    b)    A preliminary and permanent injunction ordering defendants to stop housing gang dropouts and other vulnerable persons with active gang members;

    c)    A preliminary and permanent injunction ordering defendants to stop housing inmates in units where they have a credible threat of harm from other inmates in that unit;

    d)    A preliminary and permanent injunction ordering defendants to stop disciplining inmates that refuse to be housed in units out of a credible fear for their safety;

    e)    An award of compensatory damages to plaintiffs in a sum that is just as determined by a jury;

    f)    An award of punitive damages in a sum that is just as determined by a jury, here alleged to be $5,000,000.

    g)    Plaintiffs' and the putative class members' costs and attorney fees in this suit, and

    h)    Any additional relief this court deems just, proper, and equitable.

///

///

PAGE 19 – **CLASS ACTION COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

**Plaintiffs and the putative class members request a trial by jury on all matters so triable.**

DATED: March 27, 2020

                                                      **Law Offices of Daniel Snyder**

                                                      *s/ John Burgess*
                                                      John Burgess, OSB No. 106498
                                                      johnburgess@lawofficeofdanielsnyder.com
                                                      Tel: (503) 241-3617 / Fax: (503) 241-2249
                                                      Of Attorneys for Plaintiff

PAGE 20 – **CLASS ACTION COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249