UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

CASEY SNIDER *et al.*

        Plaintiffs,

vs.

OREGON DEPARTMENT OF
CORRECTIONS *et al.*

        Defendants,

Case No. 2:20-cv-00510-MK

**OPINION AND ORDER**

**KASUBHAI,** United States Magistrate Judge:

Plaintiffs, Darrel Carlson and Jerry Anderson (for purposes of this motion "Plaintiffs") brought this class action alleging that Defendants willfully and deliberately refused to protect Plaintiffs and putative class members from known dangers of assault from other inmates.[1] Third

---

[1] At this time, there are fourteen named plaintiffs. Defendants' partial motion for summary judgment only concerns two of the named Plaintiffs, Carlson and Anderson. We limit our discussion to the parties relevant to Defendants' motion.

Am. Compl. ¶ 2, ECF No. 28 ("TAC"). Defendants moved for partial summary judgment. *See* Defs.' Mot. Partial Summ. J. 1-2, ECF No. 55 ("Defs.' Mot."). Plaintiffs opposed the motion. Resp. Defs.' Response, ECF No. 62. All parties have consented to jurisdiction by a U.S. Magistrate Judge. ECF No. 24. For the reasons that follow, Defendants' partial motion for summary judgment is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiffs are two Adults in Custody ("AIC") within the Oregon Department of Corrections ("ODOC"). TAC ¶¶ 5, 10, ECF No. 28. Plaintiffs allege that in Oregon prisons, "gang members still participating in gang activities are referred to as 'active,'" while those who have "left the gang are called 'dropouts.'" *Id.* at ¶ 53. Inmates that are classified as dropouts "are subject to violence at the hands of active gang members." *Id.*

Prior to 2019, in accordance with Oregon's policies some of the prisons housed dropouts and active gang members in separate units. *Id.* at ¶ 54. In 2019, that policy was discontinued. *Id.* Under the new system, ODOC provided only general population housing and incentive housing. *Id.* Because of that policy, dropouts and active gang members were housed in the same units. *Id.* Since the change in housing policy, Plaintiffs have been assaulted on several occasions. *Id.* at ¶¶ 74–87, 95–100.

**I.    Carlson**

Carlson is an AIC at the Two Rivers Corrections Institution ("TRCI"). TAC ¶ 6, ECF No. 28. Eynon Decl. ¶ 3, ECF No. 56. Carlson has been incarcerated since September 2011. Eynon Decl. ¶ 6, ECF No. 56. In 2019, inmates assaulted Carlson on two separate occasions—April 10 and July 31. *Id.* at ¶¶ 78, 80. A purported gang member committed one of the assaults. *Id.* at ¶ 80. During the time between April and September, Carlson filed two grievances unrelated to the

two assaults. Eynon Decl. Ex. 8, ECF No. 54. Carlson did not file any grievances related to the April 10 and July 31 assaults against him. *Id.* at 11.

**II.     Anderson**

Anderson is an AIC at the Oregon State Penitentiary ("OSP"). Kidwell Decl. ¶ 3, ECF No. 57. ECF No. 28. Anderson alleged that in 2019, inmates assaulted him on three different occasions—August 6, August 16, and November 19, 2019. TAC ¶¶ 96–100, ECF No. 28. Anderson alleged that gang members committed two of those assaults. *Id.* at ¶¶ 96, 100.

Anderson sent a grievance on November 19 regarding the November 14 assault. Kidwell Decl. Ex. 9 at 11, ECF No. 57 ("Anderson's Grievances"). The OSP grievance office received the grievance on December 3, which is 14 days after Anderson sent the grievance. *Id.* It is unclear from the record what delivery method Anderson used and what protocol the Defendants use to process grievance forms. The Defendants offered evidence that they deem a grievance is received on the date that a grievance form is stamped "received" with the date the stamp was placed on the form. *Id.* at Ex. 3, Ex. 9. OSP's grievance office denied Anderson's grievance because it did not receive the grievance within 14 days of the assault, as required by Oregon's Administrative Rules ("OAR"). *Id.* at 12. In January 2020, Anderson attempted to appeal that decision twice. *Id.* at 13–14. In one of the appeals, Anderson asserted that he submitted the appeal in a timely manner. *Id.* at 13. In response to both of the appeals, OSP's grievance office denied it because "[a] denied initial grievance or appeal cannot be appealed." *Id.* at 15, 18. Anderson did not file any grievances relating to the first two previous assaults.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute

as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

## DISCUSSION

Plaintiffs bring two claims for relief against Defendants. First, Plaintiffs allege that individually named defendants, in violation of 42 U.S.C. § 1983 and the Eighth Amendment, failed to protect Plaintiffs by exposing them to violence. TAC ¶¶ 156–61, ECF No. 28. Second, Plaintiffs allege that the ODOC negligently exposed Plaintiffs to known dangers. *Id.* at ¶¶ 162–72. Defendants move for partial summary judgment on both claim because (1) Plaintiffs failed to exhaust their administrative remedies and (2) Plaintiff's second claim is barred by sovereign immunity. Defs.' Mot. 2–3, ECF No. 55. The Court addresses those arguments in turn.

I.      **Exhaustion of Administrative Remedies**

Defendants contend Plaintiffs failed to exhaust their administrative remedies under OAR 291-109-0140(2). Plaintiffs agree that they either did not file a grievance or that the grievance was untimely. Pls.' Response 2, ECF No. Plaintiffs, however, argue that they should be excused from the Prison Litigation Reform Act's, ("PLRA"), 42 U.S.C. § 1997e, exhaustion requirement because no administrative remedy was effectively available.

A.      **PLRA Exhaustion Standards**

Under the PLRA, inmates must exhaust all available administrative remedies before filing a federal action to address prison conditions or incidents. *See* 42 U.S.C § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement is mandatory and requires compliance with both procedural and substantive elements of the prison administrative process. *Woodford v. Ngo,* 548 U.S. 81, 85, 91 (2006) (stating that the PLRA exhaustion requirement requires "proper" exhaustion and compliance "with an agency's deadlines and other critical procedural rules"); *McKinney v. Carey*, 311 F.3d 1198, 1199-1200 (9th Cir. 2002) (per curiam). Inmates must exhaust available administrative remedies before filing a § 1983 action, including appealing grievance decisions to the highest level. *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017).

If the defendant shows that the inmate did not exhaust an available administrative remedy, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014);

Page 5 — OPINION AND ORDER

*see also Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (explaining that the PLRA does not require exhaustion when administrative remedies are "effectively unavailable"); *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005) (stating that an administrative remedy must be available "as a practical matter"). Courts review the evidence in the light most favorable to the non-moving party and draws all reasonable inference in the non-moving party's favor. *Albino*, 747 F.3d at 1168.

      **B.**     **Relevant Changes to Grievance Process**

ODOC grievances are processed in accordance with ODOC's Administrative Rules Chapter 291, Division 109. Eynon Decl. ¶ 7, ECF No. 56; Kidwell Decl. ¶ 7, ECF No 57. ODOC's grievance rules were amended effective October 18, 2019. Here, four of the assaults occurred prior to the effective date of the amendment of October 18, 2019, and one assault occurred after the effective date. The Court discusses the OAR applicable prior to October 18, 2019, and then discusses the relevant changes implemented after October 18, 2019.

          1.     <u>OAR Applicable Pre-October 18, 2019</u>

AICs are generally encouraged to communicate with line staff verbally or in writing as their primary means of resolving disputes prior to filing a grievance in order to handle questions and complaints. Eynon Decl ¶ 8, ECF No. 56; Kidwell Decl ¶ 8, ECF No 57. "If an inmate is unable to resolve an issue through informal communications, the department encourages the inmate to seek resolution of the issue by submitting a written grievance." OAR 291-109-0140(1)(a) (2014) (*amended and renumbered* OAR 291-109-0210).

As relevant to the parties' arguments, an inmate may file a grievance concerning:

(a) The misapplication of any administrative directive or operational procedure;
(b) The lack of an administrative directive or operational procedure;

> (c) Any unprofessional behavior or action which may be directed toward an inmate by an employee, contractor, or volunteer of the Department of Corrections or the Oregon Corrections Enterprises[.]

OAR 291-109-0140(2) (2014). However, OAR 291-109-0140(3) (2014) outlines what an inmate may not grieve. As relevant here, OAR 291-109-0140(3)(b) (2014) provides that an inmate cannot grieve "[i]ncidents or actions for which there exists a separate internal department appeal or review process as identified by an OAR for which an inmate may take part in[.]"

The Pre-October 18, 2019 OAR provided that the grievance coordinator must receive an inmate's grievance within 30 calendar days of the date of the incident or issue. OAR 291-109-0150 (*repealed by* DOC 16-2019).

### 2. Post-October 18, 2019 OAR Amendments

Many of the relevant provisions after the amendment remain in place. For instance, AICs are still encouraged to communicate with line staff verbally or in writing as their primary means of resolving disputes prior to filing a grievance in order to handle questions and complaints. Eynon Decl ¶ 8, ECF No. 56; Kidwell Decl ¶ 8, ECF No 57. However, after the amendments, an inmate "may file a single grievance concerning *any* incident or issue regarding institutional life that directly and personally affects that AIC." OAR 291-109-0210(3) (emphasis added). OAR 291-109-0210(3) provides a non-exhaustive list of examples, which include the "[m]isapplication of departmental policies, rules, or other directives."

Particularly relevant here, OAR 291-109-0150 was repealed and grievances must now be received by the institution grievance coordinator or designee within 14 calendar days from the date of the incident or issue being grieved. OAR 291-109-0205(1).

### C.     Availability of Remedy

Plaintiffs do not dispute that they failed to file grievance relating to the April 10 and July 31 assaults on Carlson, and the August 6 and August 16 assaults on Anderson. Pls.' Response 2, ECF No. 62. Plaintiffs provide two arguments in support of their position that a remedy was unavailable. First, Plaintiffs assert that OAR 291-109-0140(2) (2014) does not provide a remedy for Plaintiffs because "their claims do not fall within any of the grievable subject matter." *Id.* at 4. Alternatively, Plaintiffs argue that even if the assaults were grievable, Plaintiffs were barred from exhausting their administrative remedies under OAR 291-109-0140(3), which states that an inmate may not file a grievance if "a separate review process" is available.

### 1.     Whether a Remedy was Available under OAR 291-109-0140(2)

Defendants argue that Plaintiffs failed to exhaust their administrative remedies because they failed to grieve the misapplication of any departmental policies, rules, or directions and unprofessional actions of employees. Defs.' Mot. 5, ECF No. 55. Plaintiffs respond that their claims do not fall within any of the grievable issues outlined under OAR 291-109-0140(2) (2014).

This lawsuit concerns "Defendants' willful and deliberate refusal [to] protect Plaintiffs . . . from known dangers of assault from other inmates." TAC ¶ 3, ECF No. 28. The TAC alleges that "ODOC, through its policies and practices as crafted, implemented and enforced by defendants, [ ]failed to protect inmates that are likely to be assaulted." *Id.* The remedy Plaintiffs seek, among other things, is "an injunction requiring that defendants undertake steps to ensure that inmates are safely housed and not assaulted." *Id.* The TAC alleges that Defendants misapplied the policy in keeping Defendants safe and alleges that a policy is required to house dropouts and gang members separately, *i.e.* that there is a lack of an administrative directive or

procedure. Furthermore, Plaintiffs concede that it is the policy of ODOC to protect inmates. And that "ignoring potential threats from other inmates when they are part of a group, as opposed to a specific individual" is contrary to "what ODOC's policy provides." Pls.' Response 4, ECF No. 62.

Plaintiffs TAC alleges the misapplication of an administrative directive or operation procedure. Because OAR 291-109-0140 (2014) provides that an inmate may file a grievance as to the misapplication of any administrative directive or operational procedure or the lack of an administrative directive or operational procedure, Plaintiffs' allegations are grievable.

### 2. Whether an Administrative Remedy was not Available because a Separate Review Process Existed

Alternatively, Plaintiffs argue that an administrative remedy was unavailable because a separate review process existed under OAR 291-046 or, alternatively, OAR 291-069. However, under OAR 291-046-0100, an AIC may file a petition for administrative review if they have been involuntarily placed into protective custody and under OAR 291-069-0280, an AIC may file a petition for administrative review if ODOC designates them a "high alert" management inmate. Plaintiffs have not alleged that they were involuntarily placed into protective custody or that ODOC designated them as high alert management inmates. The exception listed under OAR 291-109-0140(3)(b) (2014) is not applicable because Plaintiffs did not have a "separate internal department appeal or review process." Plaintiffs were required to grieve under OAR 291-109-0140 (2014). Plaintiffs failed to file a grievance. Plaintiffs failed to exhaust their administrative remedies for the April 10, July 31, August 6, and August 16 assaults. The Court grants summary judgment in favor of Defendants as to those assaults.

       3.      <u>November 14 Assault Against Anderson</u>

Because Defendants have demonstrated that there was an available administrative remedy, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172; *see also Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (explaining that the PLRA does not require exhaustion when administrative remedies are "effectively unavailable"); *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005) (stating that an administrative remedy must be available "as a practical matter").

Here, Anderson sent a grievance five days after the November 14 assault. Anderson's Grievances, ECF No. 57. The OSP grievance office received the grievance 14 days after Plaintiff sent it. *Id.* OSP's grievance office denied the grievance because it did not receive the grievance within 14 days of the incident. *Id.* at 12. The grievance process in place after October 18, 2019, requires that grievances be received within 14 calendar days from the date of the incident. OAR 291-109-0205(1). Defendants do not dispute that Anderson sent the grievance on November 19, 2019. Anderson attempted to appeal that decision twice in January 2020. Anderson's Grievances, ¶¶ 14, 17, ECF No. 57. Both times, OSP's grievance office denied it because "[a] denied initial grievance or appeal cannot be appealed." *Id.* at 15, 18.

Anderson sent a grievance well within the 14-day window for the grievance to be received. The Court is unpersuaded by the evidence in the record that where the Defendants acknowledge that Anderson sent the grievance within five days of the incident, and where the Defendants are in control of the process through which grievances are sent and then processed, then they could not have received the grievance within the limited time the rules require. If the Defendants are to require grievances to be filed within fourteen days of an incident, then they

must ensure a more robust process for receipt of grievances if they cannot accommodate receipt of grievances nine days after they are sent. The Court finds a remedy was effectively unavailable under these circumstances.

## II.     Sovereign Immunity

Defendant ODOC asserts that the Eleventh Amendment bars Plaintiffs from bringing their state law claims to this Court for adjudication. Defs.' Mot. 8, ECF No. 55. A state may waive its immunity to suit in federal court by express consent. *Pennhurst State School and Hosp. et al. v. Halderman,* 465 U.S. 89, 99 (1984). Without such waiver or an abrogation of immunity by Congress, a federal court lacks jurisdiction over a state for violation of its own laws. *Id.* at 121. When a court determines that it lacks subject-matter jurisdiction, it "must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Plaintiffs do not dispute Defendants' contention that state law governing Plaintiffs' state law claims do not provide the express consent necessary for waiver of immunity. Pls.' Response 7, ECF No. 62. However, Plaintiffs expressly oppose Defendants' partial motion to dismiss in order to preserve their right to refile the claims in state court. *See* ORS 12.220(1)(allowing plaintiff to commence a new action within 180 days of an involuntary dismissal without prejudice). The Court grants Defendants motion for summary judgment. ODOC is dismissed as a defendant.

## CONCLUSION

For the reasons above, Defendants' motion for partial summary judgment (ECF No. 55) is GRANTED in part and DENIED in part. The Court grants Defendants' motion for summary judgment arising out of Darrel Carlson and Jerry Anderson's claims, except Anderson § 1983

claim pertaining to the incident arising out of November 14, 2019. The Court grants Defendants' motion for summary judgment as it relates to defendant ODOC.

DATED this 27th day of December 2022.

                                                       s/ Mustafa T. Kasubhai
                                                     MUSTAFA T. KASUBHAI (He / Him)
                                                     United States Magistrate Judge